[Cite as *State v. Garduno*, 2013-Ohio-4300.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0139** |
| RALPH FRANCIS GARDUNO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 75 CR 144A.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Ralph Francis Garduno, appeals the judgment of the Portage County Court of Common Pleas denying his motion for resentencing. Appellant was sentenced to death in 1976 following his conviction, after a jury trial, of aggravated murder. At issue is whether appellant was entitled to a resentencing after this court in *State v. Garduno*, 11th Dist. Portage No. 710, 1979 Ohio App. LEXIS 12085 (Jul 2, 1979) ("*Garduno I*"), modified his sentence by reducing it to life imprisonment. This

court modified appellant's sentence following the decision by the United States Supreme Court in *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Bell v. Ohio*, 438 U.S. 637 (1978), that Ohio's death penalty statute was unconstitutional. For the reasons that follow, we affirm.

{¶2} On February 18, 1975, appellant, Kenneth McDaniels, James Krug, and Karl Netolicky were driving from Akron to Youngstown. Appellant was driving and his accomplice, McDaniels, was in the front passenger seat. The victims, Krug and Netolicky, were in the back. Appellant stopped the car in an isolated area, and McDaniels pulled a gun on Krug and Netolicky. Appellant told the victims he was under orders to either kill them or he would be killed.

{¶3} Appellant and McDaniels had the victims get out of the car. Krug and Netolicky walked to the edge of the road. Suddenly, Netolicky was shot. Krug was then shot and collapsed. Krug was then kicked in the head. Appellant ordered McDaniels to "shoot them in the head." Krug and Netolicky were found at about 5:00 a.m. by a passing motorist. Krug was rushed to the hospital where he was found to have multiple bullet wounds, one of which shattered his spine causing him to be paralyzed from the waist down. Netolicky also sustained several bullet wounds resulting in his death.

{¶4} Krug identified appellant and McDaniels as the assailants. Warrants were issued for their arrest, and both were apprehended toward the end of 1975.

{¶5} After the case was tried by a jury, appellant was found guilty of aggravated murder with specifications and attempted aggravated murder. Following a mitigation hearing, on May 27, 1976, the trial court sentenced appellant to death for aggravated

2

murder and seven to 25 years in prison for attempted aggravated murder. Appellant appealed his conviction to this court.

{¶6} While appellant's direct appeal was pending, the United States Supreme Court in *Lockett* and *Bell* held that Ohio's statutory scheme for determining the death penalty was unconstitutional. These cases were remanded to the Supreme Court of Ohio for further proceedings.

{¶7} Pursuant to this remand, the Ohio Supreme Court issued a judgment entry, dated August 16, 1978, ordering that the judgments in 54 listed cases affirming the death sentence of each defendant named therein be modified and that the death sentence of each such defendant be reduced to life imprisonment. Appellant's case was not included in this list as it was still pending in this court when the Supreme Court of Ohio issued this entry.

{¶8} This court, in *Garduno I*, modified the trial court's judgment "by reducing the penalty from death to life imprisonment and affirmed as modified." *Id.* at *13. This court stated that, "[i]n doing so we follow the action of the Supreme Court of Ohio in its entry of August 16, 1978." Further, this court in its judgment entry, dated July 2, 1979, "modified and affirmed as modified" the trial court's judgment and incorporated this court's decision. Appellant did not appeal this court's judgment to the Ohio Supreme Court.

{¶9} Instead, 32 years later, on September 19, 2011, appellant filed a motion in the trial court for resentencing pursuant to R.C. 2929.06. Thereafter, appellant filed a supplemental motion for resentencing pursuant to former R.C. 2967.19. The trial court denied appellant's motion for resentencing by its judgment entry, dated August 27,

3

2012.  Appellant appeals the trial court's judgment, asserting the following for his sole assignment of error:

{¶10} "The trial court committed error when denying motion to correct illegal sentence, in a vacated death-penalty case, pursuant to R.C. 2967.19; 139 v S 1, eff. 10-19-81; Criminal Rule 36; and, the dictates of *State v. Harris*, 2012 Ohio LEXIS 1000."

{¶11} This case involves the interpretation of criminal statutes, which presents an issue of law that is reviewed de novo on appeal.  *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶8.  A court does not need to interpret a statute "when statutory language is plain and unambiguous and conveys a clear and definite meaning." *Campbell v. Carlisle*, 127 Ohio St.3d 275, 2010-Ohio-5707, ¶8.

{¶12} In appellant's initial motion for resentencing, he argued he was entitled to a resentencing pursuant to R.C. 2929.06.  That statute provides that if a death sentence is vacated on appeal based on the unconstitutionality of the statutory procedure for imposing the death sentence, the trial court that sentenced the defendant shall conduct a resentencing hearing.  Appellant argued in his motion for resentencing that, once Ohio's death penalty statute was held to be unconstitutional, this court was not authorized to modify his sentence.  He argued this court's authority was limited by R.C. 2929.06 to vacate his death sentence and to remand his case to the trial court for resentencing.

{¶13} The Supreme Court of Ohio addressed this same argument in *Johnson v. Mitchell*, 85 Ohio St.3d 123 (1999).  Johnson's death sentence was modified to life imprisonment by the Ohio Supreme Court's order of August 16, 1978. Twenty years later, he filed a petition for a writ of habeas corpus, arguing he was entitled to be

4

released because he had not been resentenced in the trial court after his sentence was modified. In *Johnson*, the Ohio Supreme Court held that, since R.C. 2929.06 did not become effective until October 19, 1981, three years after Johnson's sentence was modified, the statute did not apply to him. *Id.* at 124. As a result, the Court held that Johnson was not entitled to a resentencing after his death sentence was modified. *Id.*

{¶14} Likewise, here, R.C. 2929.06 was not effective until two years after this court modified appellant's death sentence. Thus, pursuant to *Johnson*, R.C. 2929.06 did not apply to appellant, and he was not entitled to a resentencing pursuant to this statute.

{¶15} Appellant concedes that R.C. 2929.06 does not apply to his case. He thus abandons this argument on appeal, acknowledging that, because his sentence to death was modified in 1979 and thus prior to the effective date of R.C. 2929.06, that statute did not entitle him to a resentencing.

{¶16} Alternatively, appellant argues that, pursuant to Am. Sub. S.B. No. 1, which also became effective October 19, 1981 as former R.C. 2967.19, he was entitled to a resentencing. Former R.C. 2967.19 provided that anyone who was charged with aggravated murder allegedly committed prior to the effective date of the statute, i.e., October 19, 1981, shall, upon conviction, "be sentenced to life imprisonment with parole eligibility after serving 15 full years of imprisonment." The statute further provided: "Any such person *shall*, upon resentencing *after the person's sentence of death is vacated*, be sentenced to life imprisonment with parole eligibility after serving 15 years of imprisonment." (Emphasis added.)

{¶17} According to the plain and unambiguous provisions of former R.C. 2967.19, the statute only provides for resentencing when a defendant's death sentence has been vacated. Here, appellant's death sentence was not simply vacated. Instead, this court modified appellant's sentence by reducing the penalty from death to life imprisonment and affirmed the sentence as modified. Since this court modified appellant's sentence, he was not entitled to resentencing by the trial court pursuant to former R.C. 2967.19.

{¶18} Appellant has not drawn our attention to any pertinent case law holding that former R.C. 2967.19 required that an offender be resentenced when his sentence had been modified by an appellate court. However, our holding that appellant is not entitled to a resentencing finds support in the August 16, 1978 order issued by the Supreme Court of Ohio. In that order the Court modified the death sentence in 54 cases before it by reducing the penalty to life imprisonment; the Court did *not* remand the cases to the respective trial courts for resentencing.

{¶19} In any event, by modifying appellant's sentence, this court in effect resentenced him. First, there is no question that this court had the power to modify appellant's sentence as it did in *Garduno I.* R.C. 2501.02, which was in effect in 1979, provides that the courts of appeals "shall have jurisdiction upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments * * * of courts of record inferior to the court of appeals within the district * * * for prejudicial error committed by such lower court." Further, former R.C. 2953.07, which was also in effect in 1979, provided that an appellate court may affirm, reverse, or modify the judgment as

6

provided in R.C. 2945.79(D). The latter provision granted to the appellate court the power to modify the verdict and pass sentence on such verdict as modified.

{¶20} In addition, appellant concedes in his brief that his modified sentence was subject to the statutory parole eligibility in former R.C. 2967.13(B), which became effective on October 19, 1981. That version of the statute provided: "A prisoner serving a sentence of imprisonment for life for the offense of * * * aggravated murder, *which sentence was imposed for an offense committed prior to the effective date of this amendment [i.e., October 19, 1981]*, becomes *eligible for parole after serving a term of fifteen full years.*" (Emphasis added.)

{¶21} Since this court exercised its power to modify appellant's sentence and his modified sentence was subject to the parole eligibility provided in former R.C. 2967.13(B), the effect of this court's modification was to resentence him to life in prison with parole eligibility after he served 15 full years in prison. Since this would have been the only available sentence if this case had been remanded to the trial court, appellant was not entitled to a resentencing.

{¶22} Appellant argues his sentence was illegal because the trial court's entry sentencing him to death is the only sentencing entry in this case and the Adult Parole Authority ("the APA") could not have determined his parole eligibility date from that entry. However, as a result of this court's decision in *Garduno I*, appellant's sentence was modified. No other sentencing entry was necessary to reflect this modification of appellant's sentence. Thus, contrary to appellant's argument, the trial court's entry sentencing him to death was not the only sentencing entry in this matter. Further, since the parole eligibility provisions in former R.C. 2967.13 applied to appellant's case, he

was eligible for parole after serving 15 full years in prison. Thus, the APA could determine appellant's parole eligibility date from his sentence as modified by this court.

{¶23} Finally, appellant argues he should be discharged because the APA failed to obtain a "proper sentencing journal entry that described this court's 'modified sentence.'" He argues that, without such an entry, the APA lost custody over him. As a result, he argues the "maximum sentence" imposed by this court is void and he should be immediately released. This argument lacks merit for several reasons.

{¶24} First, appellant fails to draw our attention to any statutory obligation requiring the APA to obtain a resentencing entry or that such an entry was necessary in light of this court's modification of his death sentence.

{¶25} Second, appellant does not make a credible argument, by reference to pertinent authority, that the APA lost custody over him.

{¶26} Third, it is unclear as to what appellant is referring when he refers to his "maximum sentence" and asks that it be vacated as void. There is no minimum or maximum sentence here. He was originally sentenced to death. Thereafter, this court modified his sentence by reducing the penalty to life imprisonment.

{¶27} Fourth, because appellant is arguing he should be immediately released from custody, he appears to be asserting entitlement to habeas corpus relief. Habeas corpus is an available remedy only in "certain extraordinary circumstances where there is an unlawful restraint of a person's liberty * * *." *State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 186, (1995). "Additionally, habeas corpus lies only if the petitioner is entitled to immediate release from confinement." *Id.* at 188. Appellant has failed to demonstrate his entitlement to immediate release from prison. While appellant was

8

*eligible* for parole after serving 15 full years in prison under R.C. former R.C. 2967.13, *eligibility* for parole does not equate to *entitlement* to it.

{¶28} Fifth, appellant argues that, because he was never resentenced in a proper resentencing hearing, he has never become eligible for parole. However, appellant concedes in his brief that his modified sentence was subject to the parole eligibility provisions in R.C. 2967.13 and that the APA has asserted jurisdiction over his parole eligibility proceedings.

{¶29} For the reasons stated in the opinion of this court, appellant's assignment of error is overruled. It is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____


COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶30} I respectfully dissent regarding whether this matter should be remanded for resentencing. As the majority notes, in *Garduno I*, this court followed the example set by the Supreme Court of Ohio after the United States Supreme Court's declaration that Ohio's death penalty scheme was unconstitutional: i.e., this court modified appellant's death penalty to life imprisonment, and affirmed as modified. However, it does not appear that this was the *only* course of action open to this court in 1979: it appears this court could have remanded the matter to the trial court at that time for resentencing. I respectfully believe there is a difference between cases which have

9

already passed through the courts of appeals, and are pending before the state's supreme tribunal, and those which remain in the courts of appeals. While this court certainly had the power to do what it did in *Garduno I*, I believe the power to modify felony sentences should be used sparingly, especially in such serious cases as murder. Our common pleas bench is particularly tasked with fashioning felony sentences: the experienced trial judges of common pleas are better situated to do it than this court. Consequently, I believe that the best course of action now, as then, is a remand for resentencing.

{¶31} Appellant has not filed a request for habeas corpus. It is a request for resentencing. Therefore, I disagree with the majority giving an advisory opinion on appellant's rights to relief under habeas corpus.

{¶32} I respectfully dissent.